EMILY SCHULZ, Respondent, *v.* THE SECOND AVENUE RAILROAD COMPANY, Appellant.

*Negligence — injury while alighting from a street car — plaintiff's statement must establish negligence.*

Where a passenger upon a street horse car is injured by falling while alighting from the step of the car, the burden of proving a negligent starting of the car rests upon the plaintiff.

Where the plaintiff, who is the only witness testifying upon the subject, cannot tell how the accident happened clearly enough to enable the jury to see that it was the starting of the car after it had stopped which caused her to slip and fall, she will not be permitted to recover upon any guess or speculation upon the jury's part, as to how the accident occurred.

RUMSEY and PATTERSON, JJ., dissented.

APPEAL by the defendant, The Second Avenue Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 16th day of March, 1896, upon the verdict of a jury rendered after a trial at a Trial Term of the Supreme Court held in and for the county of New York, and also from an order entered in said clerk's office on the 10th day of April, 1896, denying the defendant's motion for a new trial made upon the minutes.

*Payson Merrill,* for the appellant.

*Edward Miehling,* for the respondent.

WILLIAMS, J.:

The action was brought to recover damages for personal injuries alleged to have been caused by the negligence of the defendant. The plaintiff was injured about midnight of the 23d day of August, 1891, at the corner of Fifth street and First avenue, in the city of New York, while alighting from one of the defendant's street horse cars, upon which she had been riding with her father. The car was an open one, having side curtains, and on the night in question it was rainy and wet and the curtains were down. The plaintiff's theory of the accident at the trial was that the conductor stopped the car to permit her and her father to alight; that the plaintiff's father got down upon the ground, and then plaintiff started to get down, and when she was on the car step, which was wet and slippery, the car was started, causing her to slip and fall upon the ground. At the time of the trial, which took place nearly five years after the accident, the plaintiff's father was dead, the conductor of the car could not be found, the driver testified that he knew nothing of any accident having occurred, and no passengers upon the car were produced. The only witness as to what occurred, therefore, was the plaintiff herself, and the question is, whether, upon her evidence, it was satisfactorily shown that there was negligence on the part of the defendant in starting the car while the plaintiff was alighting and that that negligence caused the plaintiff's injuries.

On the 5th of September, 1891, about two weeks after the accident, the plaintiff made a written statement, in which she said that the car was standing, and not moving, when she fell; that she did not know how she happened to fall; that she thought she must have slipped off the step of the car, as it was raining and the car step was very wet; that the curtains of the car were hanging, and that she could not see very well where she was stepping. Dr. Jersey testified at the trial that on the 11th of September, 1891, he examined the plaintiff, and that she then told him that while leaving a car of the Second Avenue line, which was standing still, she slipped and fell, because of the night being wet and damp, and the car step slippery; that he made a report at the time of the examination, which he produced at the trial. These statements made soon after the accident seemed to indicate that the plaintiff did not really know just how

she happened to slip; that she did not then understand that it was the starting of the car that caused her to slip and fall.

At the trial, nearly five years after the accident, she was called upon to detail the circumstances of the accident, and it seems to us that she gave no satisfactory account, showing a negligent starting of the car, which was the cause of the accident and injuries. First she said, in reply to her own counsel, that she could not tell whether the conductor stopped the car; then she said the car was getting in motion, and as she was getting out, the car got in motion and she fell; that the car was started. Then she said the car was in motion, and, as she was trying to get out, the curtain was lifted on the side and she slipped and fell down as the car was in motion. Then, in reply to the court, she said that the car was in motion as she was alighting to get out, it was moving as she was trying to get out, it had not stopped at all; that it stopped, and, as she was trying to get out, it got in motion; the car was in motion; she could not tell whether it had stopped before that. Then, in answer to her counsel, she said the car stopped before she fell, and then it started up again after that, just before she fell. A recess was then taken by the court, and after recess the plaintiff was again put upon the stand and was asked by her counsel to tell what occurred in her own way, and she replied that her father, she thought, gave the signal to stop; as he was giving the signal to stop, the car stopped as she was getting out; her father got out first; as her father got out first, he stepped out and gave the signal, and as soon as he gave the signal he got out, the car got into motion and she fell down. Then the court took the witness again and examined her, and she said the car stopped before she started to get down, and then she tried to get down and fell; as she was getting out the car stopped; it was raining, and, as she was getting out, the car stopped, and she made a mistake, the car was slippery, it was raining, and, as she was getting out, she slipped, the car gave a jerk and she fell down; as she was getting out she slipped, and the car was in motion and she fell. The court then directed counsel to try and make it plain, and plaintiff's counsel thereupon started to question her, but the court took her away from the counsel and examined her further, as follows: "Q. Did you slip before the car started off? A. I slipped. Q. You slipped first? A. Yes, sir; as I was getting out of the car

it was in motion and I fell. Q. Drop that 'in motion;' don't tell us anything about it just now, because that bewilders you. Did the car stop before you slipped or when you slipped, or did you slip at the same minute? A. I slipped at the same minute."

This closed plaintiff's examination upon this subject. There was nothing brought out on the cross-examination in any way to clear up the story told by her on the direct. The burden of proving a negligent starting of the car while the plaintiff was alighting, and which *starting caused* plaintiff to fall, was upon the plaintiff. She was the interested party, and if she could not tell how the accident happened, so clearly as to enable the jury to see that it was the starting of the car after it had stopped which caused her to slip and fall, she certainly should not have been permitted to recover upon any *guess* or speculation as to how it occurred. Negligence should be satisfactorily established in order to justify a finding of the fact. The plaintiff might well have slipped getting down from the car on such a night, though the defendant was guilty of no negligence. No presumption of negligence could arise from the fact that she did slip and fall. If she started to get down before the car stopped, and the stopping of the car caused her to slip and fall, no negligence on the part of the defendant could be found. She swore to just this, as already seen. If she started to get down before the car stopped and while it was still in motion, and slipped and fell by reason of the car being in motion, no negligence on the part of the defendant could be found. She swore to just this as already seen.

If she could not state just how she happened to slip and fall, no negligence on the part of the defendant could be found. Only in the event that her slipping was *caused* by the starting of the car after it had stopped and before she had gotten upon the ground, could negligence on the part of the defendant be found which caused the injuries. This idea was at times vaguely suggested by her, but it does not seem to us that her evidence was so clear and unequivocal as to warrant the jury in finding the fact to be that the slipping and falling was the result of the defendant's negligence in starting the car *while* she was alighting. It was not proper to allow the jurors to guess or speculate as to what the fact was, when the plaintiff at no part of her examination by her own counsel or by the court, clearly and distinctly stated the fact, as the

jury was asked to find it. Jurors are too much inclined to favor women against corporations, to allow them to find negligence upon doubtful and uncertain evidence. Plaintiff's evidence was much more consistent with a finding for the defendant than for the plaintiff upon this issue of negligence. She several times in the course of her examination testified to facts negativing the idea that the starting of the car caused her injuries. It is very likely the plaintiff told the truth about the matter in her report and statement made in September, 1891, shortly after the accident. We do not see how the finding of negligence can be sustained upon her evidence here at all.

We think the judgment and order appealed from should be reversed and a new trial should be granted, with costs to appellant to abide event.

VAN BRUNT, P. J., and BARRETT, J., concurred; RUMSEY and PATTERSON, JJ., dissented.

RUMSEY, J. (dissenting):

On the 23d of August, 1891, the plaintiff with her father was riding on a horse car of the defendant. That car was a summer car with side curtains, which, as the day was rainy, were down. Just before they reached the place of their destination, the father notified the conductor to stop the car and himself alighted. The plaintiff then attempted to get out of the car, when she fell and received the injury of which she complains and to recover for which she brings this action.

The case was tried in March, 1896. At that time the plaintiff's father was dead and the driver and conductor of the car had left the employ of the defendant, so that no witnesses could be produced upon either side to testify as to the manner in which the accident occurred, save the plaintiff herself. Consequently, there was no testimony given by the defendant as to the manner in which the accident happened, except a declaration in writing of the plaintiff, made shortly after the occurrence, which will be referred to later.

The plaintiff had a verdict for a small amount, and after a motion for a new trial had been made and denied at the Trial Term, this appeal was taken. The defendant does not rely upon any excep-

tion taken upon the trial, but based its motion, and bases this appeal, solely upon the ground that the evidence was not sufficient to warrant the verdict, and that is the only question presented upon this hearing.

It is undisputed that the plaintiff was a passenger upon the defendant's railroad; that she was about to alight from the car, and fell either just after she had stepped off of the car or while she was in the act of stepping from it. Her story of the transaction is not perfectly clear, and it is claimed by the defendant that it is so contradictory that the jury are not justified in believing it.

Upon her direct examination, after stating some few preliminary facts, the plaintiff testified that her father notified the conductor to stop. "My father gave the signal to the conductor to stop. I could not tell whether the conductor stopped the car. Q. Don't you know whether the car was stopped when you tried to get off? A. He stopped, and as I was getting out—" Then came a question which was objected to. Then the court asked the witness: "What were you going to say as you got out? A. The car was getting in motion, and as I was getting out the car got in motion and I fell. Q. It started? A. Yes, sir." Then in answer to the plaintiff's counsel she stated again: "My father went out first. It was a rainy day. There were no curtains up; they were down. * * * The car was in motion, and as I was trying to get out the curtain was lifted on the side, and I slipped and fell down as the car was in motion." By the Court: "Q. Was the car in motion as you were alighting to get out? A. Yes, sir. Q. It was moving as you were trying to get out? A. Yes, sir. Q. Had it stopped at all? A. No. Q. Never stopped? A. It stopped, and as I was trying to get out it got in motion. The car was in motion. Q. Had it stopped before that? A. I could not tell."

In answer to her counsel she testified again: "Q. You said just now that it stopped, and you said you could not tell. Now, which is it. Had the car ever stopped before you fell? Just think it over. Had the car stopped at all before you fell? A. The car stopped. It stopped as soon as father gave the motion to the conductor. That was before I fell. The car stopped before I fell, and then it started up again after that, just before I fell. Q. I want you to tell the jury whether the car was at a full stand still when you attempted to get

out ?   A. My father gave the signal; yes, sir." The witness was then told to tell the jury all that happened from the time her father gave the signal to the conductor to stop until she fell off, to which she replied by telling the streets over which the car had gone after she boarded it. Then she proceeded : " My father, I think, gave the signal to stop. As he was giving the signal to stop, the car stopped as I was getting out. Father went out first. As father got out first, he stepped out and gave the signal, and as soon as he gave the signal he got out and the car stopped, and as soon as I got out the car got into motion and I fell down, and I don't know anything more about it. After I fell down I was unconscious."

She was then asked by the court: " Q. I did not understand what you said a minute ago. Did the car stop before you started to get down ? A. Yes, sir. Q. Or not ? A. Yes, sir. Q. The car stopped first ? A. Yes, sir. Q. Then you tried to get out ? A. Yes, sir. Q. And fell down ? A. Yes, sir. Q. How did you come to fall ? A. As I was getting out the car stopped and I made a mistake. The car was slippery. It was raining, and as I was getting out I slipped. The car gave a jerk and I fell down, and I don't know anything more about it. Q. What happened first, your slipping or the car starting ? * * * A. As I was slipping — as I was getting out I slipped, and the car was in motion and I fell. * * * Q. Did you slip before the car started off ? A. I slipped. Q. You slipped first ? A. Yes, sir; as I was getting out of the car, it was in motion and I fell. * * * Q. Did the car stop before you slipped, or when you slipped, or did you slip at the same minute ? A. I slipped at the same minute." This last question was asked by the court.

Upon her cross-examination the witness stated nothing that was material as to the way in which the accident occurred. She was, however, upon her cross-examination, confronted with a paper which she signed, which contained printed questions and answers written by a physician. So far as material, these questions and answers were as follows : " Q. What day and what hour did this accident occur ? A. Sunday, August 23rd, 1891, at 11:10 P. M. Q. Where were you when it occurred ? A. Getting off the car. Q. Was the car standing or moving ? If moving, about how fast ? A. The car was standing. Q. Give full account as to accident as witnessed by

you?   A. I do not know how I happened to fall.   I think I must have slipped off the step of the car, as it was raining and the car step was very wet.   The curtains of the car were hanging and I could not see very well where I was stepping.   When I fell I landed on my side with my foot under me."   That is substantially all the evidence which was produced by the plaintiff or against her as to the manner in which this accident happened.

One observation at once occurs to one examining this evidence, and that is that it was susceptible of a construction that the witness either started to get off the car when it was in motion, after it had been stopped for her father, or that the car started with a jerk as she was getting off.   If the latter was the fact, that the car started as she was getting off, it must be conceded that it was negligence on the part of the defendant for which it would be liable.   (*Roberts* v. *Johnson,* 58 N. Y. 613.)   If the other hypothesis be the correct one, that the car had stopped, but started before the plaintiff had gotten off of the car, and while she was attempting to do so, and she fell because of the unexpected start, still the question whether the accident was caused by the defendant's negligence and the question whether the plaintiff was guilty of contributory negligence was a question for the jury.   (*Eppendorf* v. *Brooklyn City & Newtown R. R. Co.,* 69 N. Y. 195.)   Either of these hypotheses might have been adopted by the jury upon the testimony as it stood.   It must be remembered that the case could not have been taken away from the jury by the court.   If a motion for a nonsuit had been made, the plaintiff, upon the decision of that motion, was entitled to have all the evidence construed in the manner most favorable to her contention, and every inference drawn in her favor which could be thus drawn, and if, upon that construction of the evidence, the jury would have been warranted in giving her a verdict, the court would not be justified in taking the case from the jury.   (*McPeak* v. *N. Y. Central & Hudson R. R. R. Co.,* 85 Hun, 107; *Harris* v. *Perry,* 89 N. Y. 308, 311; *Sherry* v. *N. Y. C. & H. R. R. R. Co.,* 104 id. 653, 656.)   If a motion for a nonsuit had been made, or the court had been asked to direct a verdict for the defendant, the plaintiff would be entitled to insist that the evidence should be so construed in passing upon that question as to establish that she was thrown down by a jerk given to the car as she was getting out.   Therefore, we

must start in the examination of this testimony with the proposition that the case must have been sent to the jury.

There was no evidence directly contradicting the plaintiff, except the written paper which was produced, even if that paper had that effect. It appeared from the testimony of the plaintiff that when that paper was written she was under the influence of ether which had been given to her to relieve the severe pain from which she suffered because of the accident. This was not disputed. The weight to be given to that paper, therefore, was solely a question for the jury. They might well have found that, under the circumstances, the statements in the paper were not to be accepted as contradicting the plaintiff's testimony. But that paper does not necessarily contradict the story told by plaintiff upon the trial. It is evidently incomplete, and as she says it was what "she thinks" must have happened. Such a story told while she was under the influence of ether might well have been disregarded by the jury. Her testimony given upon direct examination, while it was halting and not at all clear, as might well be the case so long a time after the accident occurred, was not so inconsistent or contradictory as to deprive her of credit. As to the main facts, that the car was in motion or started with a jerk, when she attempted to get out, there was no uncertainty in her testimony. She reiterates that fact every time she tells how the accident happened. In either case it was negligence for the defendant to start the car as the witness was about to get out, and the jury might have found that such negligence caused the accident. We are, therefore, confronted with this condition of affairs : The case was one in which a motion for a verdict for the defendant could not be granted because the most favorable construction reasonably to be given to the evidence would warrant a recovery by the plaintiff. Whether the alleged contradictory evidence was of sufficient weight to contradict the plaintiff's testimony, was purely a matter for the jury, because of the circumstances under which it was given. Contradictory inferences might have been drawn from the testimony given upon the plaintiff's direct examination, and where such inferences are to be drawn they must be drawn by the jury. There is no aspect of the case in which it can be said that the evidence could be taken away from the jury and the question passed upon by the court. It must not be forgotten that questions of this

kind are peculiarly questions for the decision of the jury. That rule has never been questioned. The question for the jury arises not only when there is a conflict of testimony between witnesses, but when various inferences may be drawn from undisputed testimony. The jury must settle the dispute or they must decide which inferences they will draw. There is no rule which requires more evidence in a case of this kind than in any other civil case. All that is necessary in any case is that the plaintiff should establish by a preponderance of evidence the facts which she alleges. In this case there was no testimony against her, and the case could only be taken from the jury if the court is able to say, as a matter of law, that her testimony is so contradictory and inconsistent as to be wholly incredible. No such conclusion can be reached. The most that can be said is that the evidence was weak; that the conclusions to be drawn from it were doubtful. But when that is said the necessity of referring these things to the jury cannot be denied. Upon the whole case there can be no doubt that the evidence was properly submitted to the jury, and that their verdict should not be set aside.

PATTERSON, J., concurred.

Judgment reversed, new trial ordered, costs to appellant to abide event.